**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE | : | Chapter 13 |
| | : | |
| ZACHARY OBER AND JENNIFER OBER, | : | |
| | : | Bankruptcy No. 19-10607-AMC |
| DEBTORS | : | |
| | : | |

Ashely M. Chan, United States Bankruptcy Judge

**OPINION**

### I. INTRODUCTION

In the instant matter, joint debtors Zachary and Jennifer Ober (collectively, "Debtors") seek to avoid a judicial lien of Pacific Avenue Dental Care, PLLC ("Pacific Avenue") pursuant to 11 U.S.C. § 522(f)(1)(A), alleging that the lien impairs their homestead exemption under Ariz. Rev. Stat. § 33-1101(A)(1) ("Arizona Homestead Exemption") in their real property located at 7651 East 40th Place, Yuma, AZ ("Arizona Property"). Because the Debtors moved out of the Arizona Property less than two years prior to filing this bankruptcy case, a presumption arises under Ariz. Rev. Stat. § 33-1104(A)(3) that the Debtors had not abandoned the Arizona Property as of the petition date. Ultimately, the Court finds that there is insufficient evidence in this case to overcome such presumption and, therefore, concludes that the Arizona Homestead Exemption applies to the Arizona Property. Accordingly, Pacific Avenue's judicial lien on the Arizona Property will be avoided in its entirety pursuant to § 522(f)(1)(A), because such lien impairs the Debtors' Arizona Homestead Exemption according to the formula set forth in § 522(f)(2)(A).

### II. FACTUAL/PROCEDURAL BACKGROUND

1

In the spring of 2016, the Arizona Property was conveyed to the Debtors, then living as a married couple in Arizona, as community property with right of survivorship. Hrg. Tr. 10:15-19, Jan. 16, 2020 ("Hrg. Tr."); Mot. Ex. A; SOFA Pt. 1.2. On May 4, 2016, a mortgage ("Mortgage") was granted by the Debtors in favor of Guild Mortgage Company ("Guild Mortgage") against the Arizona Property as security for a promissory note executed between the parties in the principal amount of $158,332. Proof of Claim 3-1, Ex. 1. The Debtors and their children resided at the Arizona Property from that time until July 2017, when they moved to Pennsylvania. Hrg. Tr. 10:20-24; SOFA Pt. 1.2. After moving to Pennsylvania, the Debtors began to rent out the Arizona Property for $1,100 per month. Hrg. Tr. 12:4-22.

On May 31, 2018, a default judgment in favor of Pacific Avenue was entered against the Debtors in the amount of $10,779.39, plus interest, in the Yuma County Justice Court ("Default Judgment"). Proof of Claim 5-1, Attach. 1. The Default Judgment was filed with the Yuma County Superior Court on June 13, 2018. *Id.*

On January 31, 2019, the Debtors filed a voluntary joint petition for relief under chapter 13 of the Bankruptcy Code along with their schedules and statement of financial affairs. Case No. 19-10607 ECF No. ("ECF") 1.[1] The petition, schedules, and statement of financial affairs reflect that, as of the petition date, the Debtors were living in a rental property in Pennsylvania located at 43 Grouse Drive, Denver, PA. Vol. Pet. Pt. 1.5; Sch. G Pt. 2.1; Sch. J Pt. 2.4; SOFA Pt. 3.6. Additionally, the Debtors' statement of financial affairs reflects that during the ninety days before filing for bankruptcy, the Debtors made three payments of $949.48 per month to Guild Mortgage on November 1, 2018, December 1, 2018, and January 1, 2019 on account of the Mortgage on the Arizona Property. SOFA Pt. 3.6.

---

[1] The Court may take judicial notice of the dockets and content of the documents filed in the Debtors' bankruptcy case for the purpose of ascertaining timing and status of events in the case and facts not reasonably in dispute. *Olick v. Northampton County (In re Olick),* 517 B.R. 549, 554 n.7 (Bankr. E.D. Pa. 2014).

On schedule A, the Debtors valued their only real property, the Arizona Property, at $183,836.00. Sch. A Pt. 1.1. On schedule C, the Debtors elected state and federal nonbankruptcy exemptions pursuant to § 522(b)(3), claiming exemptions available under Arizona law, including the Arizona Homestead Exemption on the Arizona Property pursuant to Ariz. Rev. Stat. § 33-1101(A) in the amount of $22,281.61. Sch. C Pt. 1.1, 1.2.

According to schedule I, both Debtors were unemployed as of the petition date. Sch. I Pt. 1.1. They disclosed the following sources of monthly income on schedule I: $150.18 in net income from a rental property,[2] $1,560 in family support payments to Jennifer,[3] $2,250.62 in "VA Benefits" to Zachary, and $1,196.40 in "VA Benefits – for schooling" to Zachary. Sch. I Pt. 2.8a, 2.8c, 2.8f. Schedule J reflects that, as of the petition date, after accounting for their monthly expenses, the Debtors' monthly net income amounted to $457.53. Sch. J Pt. 2.23(c). Schedule J further reflects that as of the petition date, the Debtors' three children were ages 2, 6, and 11. Sch. J Pt. 1.2.

Also on January 31, 2019, the Debtors filed their original chapter 13 plan, which, in relevant part, proposed to pay the chapter 13 trustee $450 per month for forty-eight months ("Plan").[4] ECF 2 Plan 1.

On February 25, 2019, Guild Mortgage filed a proof of claim reflecting a total balance on the Mortgage of $149,847.78 as of the petition date, with the total prepetition arrearage amounting to $126.41. Proof of Claim 3-1 p. 2, 4. Guild Mortgage's proof of claim also states

---

[2] As mentioned earlier, the Debtors charged their tenants at the Arizona Property approximately $1,100 per month for rent. Hrg. Tr. 12:16-22. Applying the rent to pay the $949.82 monthly Mortgage payment on the Arizona Property, the amount the Debtors reported on their statement of financial affairs, yields approximately $150 in net rental income.

[3] Since this case involves discussion of a wife and husband with the same last name, the Court will use the Debtors' first names when referring to one of them individually for ease of reference, intending neither disrespect nor any indication of familiarity.

[4] On September 18, 2019, the Debtors filed an amended chapter 13 plan which, in relevant part, still proposed to pay the chapter 13 trustee $450 per month for a total of forty-eight months. ECF 32 Am. Plan 1.

that the monthly Mortgage payment as of the petition date was $933.62 starting with the February 1, 2019 payment. Proof of Claim 3-1 p. 4, Ex. 1 p. 27. On March 11, 2019, Pacific Avenue filed a proof of claim in which it characterized its claim as secured in the amount of $19,853.24 as of the petition date, perfected by a "Recorded Judgment Lien." Proof of Claim 5-1 p. 2.

On November 13, 2019, the Debtors filed a motion "to avoid the judicial lien of Pacific Avenue Dental Care, PLLC pursuant to 11 U.S.C. § 522(f)(1)(A)," arguing that it impairs their homestead exemption on the Arizona Property under Ariz. Rev. Stat. § 33-1101(A) ("Motion"). ECF 41 Mot. ¶¶ 12, 13, 14, 20, 21. On November 25, 2019, Pacific Avenue filed an objection to the Motion on the basis that its lien does not impair the Debtors' Arizona Homestead Exemption on the Arizona Property, because they abandoned the Arizona Property pursuant to Ariz. Rev. Stat. § 33-1104(A)(3). ECF 44 Obj. ¶ 18.

A hearing was held on the Motion on January 16, 2020. At the hearing, counsel for Pacific Avenue represented that:

> we don't dispute that there was less than two years from the time that they [the Debtors] left their property from the time that they filed their bankruptcy, which creates the burden on us to show the intent [to abandon the Arizona Property]. We believe that there's substantial evidence that the intent is that they, when they left the property, did not intend to return. Hrg. Tr. 5:23-6:3.

When asked by the Court whether he agreed that the only dispute was regarding the Debtors' intent to abandon the Arizona Property, counsel for the Debtors responded

> [t]hat's correct, Your Honor. I think because of the way the statute is written in Arizona it does unfortunately create a – a factual issue, to some extent, regarding what the debtor's [sic] intent was…I think we just agreed that it was less than two years since they had left Arizona, so I think the presumption is in favor of debtors and I – I understand that opposing counsel does want to testify at least one of the debtors here. *Id.* at 6:8-21.

4

Finally, counsel for Pacific Avenue affirmed the Court's understanding that "the real issue here is whether or not opposing counsel can satisfy his burden of proof to show that the debtors intended to abandon this property." *Id.* at 6:22-7:2.

At the hearing, Zachary testified that he and his family had moved from Arizona to Pennsylvania to be closer to Jennifer's family while Zachary was "on temporary disability" from the Marine Corps and awaiting further instruction from the military. *Id.* at 10:25-11:20, 13:13-19. Zachary further testified that, as of the petition date, he remained "on temporary disability" status with the military. *Id.* at 11:8-14. He also testified that while he intends to move back to Arizona, he has no specific time frame for doing so and has not visited the Arizona Property since moving out in July 2017. *Id.* at 11:21-24, 13:24-14:1. Rather, he explained that he intends to move back "whenever I am proven fit for duty, whenever they can call me back to my last duty station, which is in Yuma, Arizona" and that "depending on whether or not the military determines [him] to be in active duty is – is the reason why [he] would move back to Arizona." *Id.* at 11:24-12:1, 13:20-23.

Zachary's testimony also reflects that he and Jennifer have leased the Arizona Property without interruption to the same tenants for over two years since moving to Pennsylvania, but they have the "right to move back into the property at some point in the future." *Id.* at 12:4-20. As of the hearing date, the Debtors were charging $1,150 per month for rent on the Arizona Property. *Id.* at 12:21-23. Zachary further testified that the $1,100 that the Debtors had previously charged their tenants was included in the calculation of their disposable income on schedules I and J to be applied towards the Plan. *Id.* at 12:21-13:4.

At the conclusion of the hearing, the Court took the matter under advisement and instructed the parties to file supplemental briefing based upon the testimony in support of their

5

positions. *Id.* at 14:20-15:8. In accordance with the briefing schedule, Debtors' counsel filed a supplemental brief on January 30, 2020, and Pacific Avenue's counsel filed a supplemental brief on February 6, 2020. ECF 48, 51. The Court has reviewed all submissions and the matter is ripe for determination.

### III. DISCUSSION

The Debtors argue that the Arizona Homestead Exemption still applies to the Arizona Property because, as of the petition date, their less than two-year absence from the Arizona Property was presumed temporary pursuant to Ariz. Rev. Stat. § 33-1104(A)(3), and the evidence does not otherwise demonstrate that, as of the petition date, they clearly intended their removal from the Arizona Property to be permanent. Mot. ¶¶ 17-19; Debtors' Suppl. Br. 3-6. Therefore, according to the Debtors, the lien attributable to Pacific Avenue's Default Judgment should be avoided pursuant to § 522(f)(1)(A), because it impairs their Arizona Homestead Exemption on the Arizona Property. Mot. ¶¶ 20, 21; Debtors' Suppl. Br. 5-6.

Pacific Avenue argues that the evidence overwhelmingly rebuts the presumption that the Debtors' removal from the Arizona Property was temporary and establishes that they intended their removal from the Arizona Property to be permanent. Obj. ¶¶ 8, 12-18; Pac. Ave. Suppl. Br. 2-6. Therefore, Pacific Avenue contends that, because the Debtors had abandoned the Arizona Property pursuant to Ariz. Rev. Stat. § 33-1104(A)(3) as of the petition date, the Arizona Homestead Exemption does not apply to the Arizona Property and Pacific Avenue's lien stemming from the Default Judgment impairs no exemption to which the Debtors would be entitled. Obj. ¶ 18; Pac. Ave. Suppl. Br. 6.

The Court concludes that the evidence is insufficient to overcome the presumption under Ariz. Rev. Stat. § 33-1104(A)(3) that the Debtors' removal from the Arizona Property was

temporary as of the petition date. Therefore, because the Debtors had not abandoned the Arizona Property pursuant to Ariz. Rev. Stat. § 33-1104(A)(3) as of the petition date, it qualifies for the Arizona Homestead Exemption set forth in Ariz. Rev. Stat. § 33-1101(A). Accordingly, because application of the § 522(f)(2)(A) formula shows that Pacific Avenue's lien attributable to the Default Judgment impairs the Debtors' Arizona Homestead Exemption, the Court will grant the Motion.

### A. Exemptions and 11 U.S.C. § 522(f)

By way of background, the commencement of a bankruptcy case creates a bankruptcy estate consisting of all of a debtor's property. *Calderon v. Lang (In re Calderon),* 507 B.R. 724, 729 (B.A.P. 9th Cir. 2014). *See* 11 U.S.C. § 541(a). Pursuant to § 522(b), debtors may exempt property from the estate to the extent permitted by applicable law. *Calderon,* 507 B.R. at 729. As mentioned, the Debtors elected to claim exemptions available under Arizona and federal nonbankruptcy law pursuant to § 522(b)(3),[5] including the Arizona Homestead Exemption, Ariz. Rev. Stat. § 33-1101(A). Sch. C Pt. 1.1, 1.2.

Pursuant to § 522(f)(1)(A):

> [n]otwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the

---

[5] Section 522(b)(1) provides that "[n]otwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection." Section 522(b)(3) provides:
> [p]roperty listed in this paragraph is (A) subject to subsections (o) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place…

The Debtors claim that because they have been domiciled in more than one state during the 730-day period preceding the bankruptcy filing and their domicile was Arizona for the 180 days immediately preceding the 730-day period prior to the bankruptcy filing, they are entitled to elect exemptions available under Arizona law. Mot. ¶¶ 13; Debtors' Suppl. Br. 2. Pacific Avenue does not appear to contest the Debtors' eligibility to elect Arizona exemptions pursuant to § 522(b)(3) generally. *See* Obj. ¶¶ 1-18 (objecting to the Motion solely based on Debtors' intent to permanently remove themselves from the Arizona Property for purposes of qualifying for the Arizona Homestead Exemption but not based upon their eligibility to claim Arizona exemptions generally).

extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is – (A) a judicial lien, other than a judicial lien that secures a debt of a kind specified in § 523(a)(5).[6]

Accordingly, under § 522(f)(1)(A), a debtor may avoid a lien if the following conditions are met: (1) there was a fixing of a lien on an interest of the debtor in property; (2) the lien impairs an exemption to which the debtor would have been entitled; and (3) the lien is a judicial lien. *Oldfield v. Davis (In re Davis),* No. 2:12cv919, Bankr. No. 11-27057-CMB, 2013 WL 85268, at *2 (W.D. Pa. Jan. 8, 2013); *In re Fix,* 542 B.R. 502, 509 (Bankr. D. Mont. 2015). Entitlement to an exemption is determined based upon facts as they existed at the time of the debtor's bankruptcy filing. *Duncan v. Ulrich (In re Duncan),* Bk. No. 2:15-bk-14927-PS, BAP No. AZ-17-1110-FSKu, 2017 WL 5163445, at *6 (B.A.P. 9th Cir. Nov. 7, 2017); *Calderon,* 507 B.R. at 729; *Frank v. Herb (In re Herb),* 412 B.R. 688, 690 (Bankr. M.D. Pa. 2009) ("Exemption claims, too, are determined as of the date of the bankruptcy filing."); *In re Nielsen,* 401 B.R. 149, 150 (Bankr. M.D. Pa. 2009).

Section 522(f)(2)(A) sets forth a formula for determining the extent to which a lien impairs an exemption, providing:

> [f]or the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of – (i) the lien; (ii) all other liens on the property; and (iii) the amount of the exemption that the debtor could claim if there were no liens on the property; exceeds the value that the debtor's interest in the property would have in the absence of any liens.

Neither party contests that Pacific Avenue is the holder of a judicial lien which fixed on the Debtors' interest in the Arizona Property by virtue of the entry and recordation of the Default Judgment. Mot. ¶ 8 ("The entry of the judgment created a judicial lien on Debtors' jointly owned real estate."); Obj. ¶ 2 ("Pacific filed its Proof of Claim on March 11, 2019, for a secured claim from a judicial lien filed in the state of Arizona, in the amount of $19,853.24."). Therefore,

---

[6] Section 523(a)(5) pertains to debt for a domestic support obligation.

because the parties are in agreement, the Court accepts that Pacific Avenue is the holder of a judicial lien which fixed on the Debtors' interest in the Arizona Property by virtue of the entry and recordation of Pacific Avenue's Default Judgment (hereinafter, "Pacific Avenue Lien").

Therefore, as the parties have expressed, the Debtors' ability to avoid the Pacific Avenue Lien on the Arizona Property pursuant to § 522(f)(1)(A) turns on the validity of the Debtors' claimed Arizona Homestead Exemption under Ariz. Rev. Stat. § 33-1101(A). *See* Hrg. Tr. 5:23-6:3, 6:8-7:2; Mot. ¶¶ 15-19; Obj. ¶¶ 8-18.

### B. Arizona Homestead Exemption

To ascertain the validity of the Debtors' claimed Arizona Homestead Exemption, the Court must interpret and apply Arizona law. *In re Moore,* Case No. 3:18-bk-13222-DPC, 2019 WL 2487638, at *2 (Bankr. D. Ariz. June 13, 2019). Section 33-1101 of the Arizona Revised Statutes states, in relevant part:

> (A) [a]ny person the age of eighteen or over, married or single, who resides within the state may hold as a homestead exempt from attachment, execution and forced sale, not exceeding one hundred fifty thousand dollars in value, any one of the following: (1) The person's interest in real property in one compact body upon which exists a dwelling house in which the person resides…(B) Only one homestead exemption may be held by a married couple or a single person under this section. The value as specified in this section refers to the equity of a single person or married couple.

Furthermore, Ariz. Rev. Stat. § 33-1102(A) provides "[a] person who is entitled to a homestead exemption as prescribed by section 33-1101 holds that exemption by operation of law and no written claim or recording is required." Generally, Arizona's homestead statutes have been liberally interpreted to carry out their purpose of protecting claimants and their families from the forced sale of their homesteads by creditors. *Garcia v. Garcia (In re Garcia)*, 168 B.R. 403, 408 (D. Ariz. 1994); *Calderon*, 507 B.R. at 729.

Once a valid homestead exemption has been established, Ariz. Rev. Stat. § 33-1104 governs the abandonment of a homestead under certain circumstances. *Duncan*, 2017 WL 5163445, at *4; *Morrisey v. Ferguson,* 156 Ariz. 536, 538 (Ariz. Ct. App. 1988). *See also Calderon*, 507 B.R. at 730 ("Once Calderon's homestead was established by operation of law, the controlling question shifted from whether Calderon established a homestead in the residence to whether he abandoned his homestead in the residence."). Section 33-1104(A) of the Arizona Revised Statutes provides:

> [a] homestead may be abandoned by any of the following: (1) A declaration of abandonment or waiver. (2) A transfer of the homestead property by deed of conveyance or contract for conveyance. (3) A permanent removal of the claimant from the residence or the state. A claimant may remove from the homestead for up to two years without an abandonment or a waiver of the exemption.

The Ninth Circuit Bankruptcy Appellate Panel in *Calderon v. Lang (In re Calderon),* 507 B.R. 725 (B.A.P. 9th Cir. 2014), the seminal case interpreting Ariz. Rev. Stat. § 33-1104(A)(3), determined that the aspect of the statute providing that a claimant may remove from the homestead for up to two years without abandoning the homestead

> simply was meant to aid courts in determining the intended permanency of the removal from the residence. In other words, the Arizona legislature meant to make it harder for debtors to abandon their homesteads simply by moving out of their homes for less than two years, but easier for them to abandon their homesteads if they have been living elsewhere for two years or more. Regardless of the amount of time elapsed, the controlling question always remains the intent of the debtors – whether they intended for their removal to be permanent.
> *Calderon,* 507 B.R. at 731-32.

In light of the foregoing, *Calderon* articulated the following presumptions regarding a debtor's intent to abandon a homestead based upon the length of a debtor's removal from the homestead to aid in determining the validity of a claimed homestead exemption in a bankruptcy case:

> [o]n the petition date, if the debtor has been living elsewhere for less than two years, *only evidence of a clear intent of permanent removal will suffice to permit the bankruptcy court to find that the debtor has abandoned his homestead*

10

*exemption under Arizona law*. On the other hand, on the petition date, if the debtor has been living elsewhere for two years or more, then the debtor is presumed to intend for the removal to be permanent, and only evidence of a clear intent for the removal to be temporary will overcome the presumption. *Id.* at 732 (emphasis added).

In so holding, *Calderon* specifically concluded that the bankruptcy court had erred in interpreting Arizona's homestead exemption statutes as requiring proof that a debtor who had been absent from a homestead property for less than two years as of the petition date held more than a vague intent to return "someday" to the residence in order to be entitled to claim the exemption. *Id.* at 733 ("Even though Calderon…had been absent from the residence for less than two years, the bankruptcy court interpreted Arizona's homestead exemption statutes as requiring proof that Calderon held more than a vague intent to return someday to the residence. When, as here, the bankruptcy court has applied an incorrect legal standard, we typically vacate…").

> C. **Because the evidence is insufficient to establish that the Debtors abandoned the Arizona Property under Ariz. Rev. Stat. § 33-1104(A)(3) as of the petition date, their claimed Arizona Homestead Exemption is valid.**

The Obers established their homestead in the Arizona Property by operation of law by residing there from at least May 2016 to July 2017. Ariz. Rev. Stat. §§ 33-1101(A)(1), 33-1102(A). *See also Calderon*, 507 B.R. at 730 ("It is undisputed here that Calderon had been living in the residence and occupying it as his home between 2002 and 2011. This prolonged period of residency was more than sufficient to establish the residence as Calderon's homestead by operation of law."). Furthermore, it is undisputed that the Debtors did not execute and record a declaration of abandonment or waiver and that they did not transfer the Arizona Property by deed or contract of conveyance. Therefore, the Debtors could have only abandoned the Arizona Property by their permanent removal from the homestead. Ariz. Rev. Stat. § 33-1104(A)(3).

Because, as of the petition date, the Debtors had been absent from the Arizona Property for less than two years, the Court may not find that the Obers abandoned their homestead exemption under Arizona law, unless there is sufficient evidence that the Debtors clearly intended their removal from the Arizona Property to be permanent as of the petition date. *Duncan,* 2017 WL 5163445, at *6; *Calderon,* 507 B.R. at 732. The Court finds that there is insufficient evidence to support such a finding, which is necessary to overcome the *Calderon* presumption that the removal was temporary.

Zachary's consistent testimony reflects that, when he was placed on temporary disability with the military, the Debtors moved closer to Jennifer's family for help with their children, but intended to return to the Arizona Property as soon as Zachary was summoned back to active duty. As of the petition date, Zachary remained on temporary, as opposed to permanent, disability status with the military and had not separated from the military. There is no evidence that the Debtors' intention to return to the Arizona Property upon Zachary being determined fit for military service had changed by that point. In fact, Zachary continues to maintain that his intention is to return to the Arizona Property whenever the military finds him fit to serve. Ultimately, on the petition date, the Debtors had an entirely reasonable and credible basis for intending to return to Arizona – to allow Zachary to resume his military duties when called.

Although the Debtors have rented out the Arizona Property since they moved, Zachary's testimony maintains that the Debtors have the right to move back to the Arizona Property in the future, and there is no evidence contradicting that testimony. Furthermore, that both Debtors were unemployed as of the petition date further supports the credibility of their expressed intention to return to Arizona, since they will have the freedom and flexibility to do so if Zachary is found fit for duty.

Although Zachary did not offer a precise timeline for when he would be fit to return to active military duty, and therefore, when he and his family would return to Arizona, *Calderon* specifically held that Ariz. Rev. Stat. § 33-1104(A)(3) does not require proof of more than a vague intent to return "someday" to the homestead for debtors who have been absent for less than two years as of the petition date to maintain their homestead exemption. *Calderon,* 507 B.R. at 733.

In light of the foregoing, the evidence is insufficient to overcome the presumption that the Debtors' move was temporary, as it does not demonstrate the Debtors' <u>clear</u> intent of permanent removal from the Arizona Property. That the Debtors moved out of state and that Zachary had not visited Arizona since July 2017 is insufficient to evidence Debtors' clear intent that their removal was permanent. Furthermore, although the Debtors may desire their children to develop relationships with extended family in Pennsylvania and/or may prefer that their children not change schools, no testimony or evidence was offered suggesting that, as of the petition date, those reasons would have prevented the Debtors from moving back to Arizona.[7] Furthermore, no evidence suggests that the Debtors' childcare needs would render them unable to return to Arizona nor that they would be unable to obtain alternate childcare in Arizona upon their return.

Finally, although the net rental income from the Arizona Property of approximately $150 was factored into the Debtors' calculation of their disposable income for use in their proposed Plan, the Debtors most likely would not have actually needed that income to support their Plan if they moved back to Arizona. Based upon the financial information provided in the Debtors'

---

[7] That the Debtors have now currently resided away from the Arizona Property for two and a half years has no bearing on the Debtors' intent regarding the Arizona Property *as of the petition date*. *See Duncan,* 2017 WL 5163445, at *6 ("[The bankruptcy court] found that, as of the petition date, Ms. Duncan had a clear intent of permanent removal from the property…these findings are supported by the record, and the bankruptcy court did not clearly err…the bankruptcy court properly concluded that Ms. Duncan's testimony at the meeting of creditors was the best evidence of her intention at the time she filed the petition a month earlier.").

13

schedules and statement of financial affairs, a move to Arizona would have eliminated not only their $150 in net rental income from the Arizona Property, but also the Debtors' $1,200 per month rental payment for their housing in Pennsylvania, leaving their $933.62 monthly mortgage payment on the Arizona Property as their only housing cost.[8] In fact, applying the formula set forth in schedules I and J to estimate[9] the Debtors' disposable income in the event of a move to Arizona shows that, if the Debtors had moved back to Arizona at or near the petition date, they would have most likely had monthly disposable income in the approximate amount of $573.73[10] as opposed to the $457.53 of monthly disposable income with the net rental income from the Arizona Property.[11] Accordingly, that the Debtors' included their net rental income in the forty-eight month Plan is not indicative of their intent with regard to the Arizona Property because the calculations suggest that the Debtors would not have needed that income in order to maintain their Plan payments in the event they moved back to Arizona.

The evidence, therefore, has not overcome the presumption that the Debtors' move from the Arizona Property was temporary, as it fails to prove that the Debtors had a <u>clear</u> intent that their removal from the Arizona Property would be permanent, especially given the basis offered

---

[8] The monthly mortgage payment included escrow for taxes and insurance associated with the Property. Proof of Claim 3-1 p. 4, Ex. 1 p. 27.

[9] The Court recognizes that its calculation of the estimated amount of disposable income the Debtors would have in the event of an Arizona move based on the information provided in the Debtors' schedules and statement of financial affairs simply cannot account for certain factors such as the cost of utilities or transportation in Arizona as opposed to Pennsylvania. Nevertheless, the Court does not consider the impact of these factors on the calculations so material as to render the exercise of estimating the disposable income in the event of an Arizona move futile or useless, as the figures on the schedules/statement of financial affairs at least offer reasonable estimates for the calculations.

[10] The calculations yielding this number are as follows: schedule I income: $1,560 (family support payments to Jennifer) + $2,250.62 (VA benefits) + $1,196.40 (VA benefits for schooling) = $5007.02. Schedule J expenses: $933.62 (Arizona Property mortgage payment) + $250 (electricity) + $66.67 (water, sewer, garbage collection) + $350 (telephone, internet, cable) + $1,500 (food/housekeeping) + $150 (clothes/laundry/dry cleaning) + $200 (personal care products and services) + $200 (medical and dental expenses) + $400 (transportation) + $200 (entertainment) + $50 (charitable contributions) + $83 (car insurance) + $50 (pet expenses) = $4,433.29. $5,007.02 (schedule I income) – $4,433.29 (schedule J expenses) = $573.73 (disposable income).

[11] Even using the $949.48 monthly mortgage payment reported on the Debtors' statement of financial affairs would yield disposable income of approximately $557.87.

in support of the Debtors' intent to return to the Arizona Property. Accordingly, the Debtors' claimed Arizona Homestead Exemption is valid.

### D. The Pacific Avenue Lien impairs the Debtors' Arizona Homestead Exemption pursuant to § 522(f)(2)(A).

Applying the formula set forth in § 522(f)(2)(A) demonstrates that the Pacific Avenue Lien impairs the Debtors' Arizona Homestead Exemption and should be avoided in its entirety. As mentioned, pursuant to § 522(f)(2)(A), a lien impairs an exemption to the extent that the sum of the lien; all other liens on the property; and the amount of the exemption the debtor could claim if there were no liens on the debtor's interest in property; exceeds the value that the debtor's interest in property would have in the absence of any liens. The following calculations based on the formula set forth in § 522(f)(2)(A) show that the Pacific Avenue Lien impairs the Debtors' Homestead Exemption to the extent of $135,865.02:

> $19,853.24 (Pacific Avenue Lien)[12] + $149,847.78 (lien of Guild Mortgage on the Arizona Property)[13] + $150,000 (the maximum available exemption under Ariz. Rev. Stat. § 33-1101(A))[14] = $319,701.02.
> $319,701.02 - $183,836 (value of the Debtors' interest in the Arizona Property)[15] = $135,865.02.

Pacific Avenue has offered no alternative calculation for the Court to consider, nor does Pacific Avenue point out any errors in this calculation proposed by the Debtors. *See Schoaf v. First Nat'l Bank (In re Schoaf),* No. BR 13-22420-CMB, 2014 WL 223218, at *3 (Bankr. W.D. Pa. Jan. 21, 2014). Therefore, based upon these calculations, the Pacific Avenue Lien is avoidable to

---

[12] As referenced *supra* Pt. II, the Default Judgment underlying the Pacific Avenue Lien is against both Debtors. Proof of Claim 5-1, Attach. 1.
[13] As referenced *supra* Pt. II, both Debtors are obligated on the Mortgage for the Arizona Property. Proof of Claim 3-1, Ex. 1.
[14] Only one homestead exemption may be held by a married couple. Ariz. Rev. Stat. § 33-1101(B).
[15] Because Pacific Avenue has never attempted to challenge the value the Debtors ascribe to the Arizona Property, has never proposed an alternative value for the Arizona Property, and has only ever challenged the Debtors' entitlement to claim the Arizona Homestead Exemption based on their abandonment of the Arizona Property, the Court considers the value of the Arizona Property uncontested for purposes of this Motion. *See* Obj. ¶¶ 5-18; Pac. Ave. Suppl. Br. 1-6; Hrg. Tr. 6:22-7:2.

Pa. Jan. 21, 2014). Therefore, based upon these calculations, the Pacific Avenue Lien is avoidable to the extent of $135,865.02, and, accordingly, the Court will grant the Debtors' Motion to avoid the Pacific Avenue Lien in its entirety.

## IV. CONCLUSION

For the reasons stated, the Court concludes that, because the Pacific Avenue Lien impairs the Debtors' Arizona Homestead Exemption under Ariz. Rev. Stat. § 33-1101(A), the Court will grant the Debtors' motion to avoid the Pacific Avenue Lien pursuant to § 522(f).

Date: April 8, 2020

_____
Honorable Ashely M. Chan
United States Bankruptcy Judge